**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| PURZEL VIDEO GMBH, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. TBD |
| | ) | |
| JOHN DOE SUBSCRIBER UTILIZING | ) | ***JURY TRIAL DEMANDED*** |
| IP ADDRESS 76.201.89.225, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## COMPLAINT

Plaintiff Purzel Video GmbH, ("Purzel Video") brings this action against Defendant John

Doe subscriber utilizing Internet Protocol Address ("IP Address") 76.201.89.225 ("Defendant")

alleging copyright infringement and contributory copyright infringement and seeking damages

and injunctive relief. Purzel Video alleges as follows:

### JURISDICTION AND VENUE

1.      This is a suit for copyright infringement and contributory copyright infringement

under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the

"Copyright Act"). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2.      Venue in this District is proper pursuant to 28 U.S.C. § 1391 (b) and 28 U.S.C. §

1391 (b) and 28 U.S.C. § 1400(a).

3.      In addition, this Court has personal jurisdiction over Defendant because,

according to geolocation technology, the Defendant resides within this State and in this District.

Defendant conspired to and did commit acts of copyright infringement and contributory

1

copyright infringement statewide and nationwide, including in this State and in this District. Defendant, therefore, should anticipate being haled into court in this State and in this District.

## BACKGROUND

4.      Defendant acted in a collective and interdependent manner via the Internet in the unlawful reproduction and distribution of three (3) of Plaintiff's copyrighted motion pictures by means of an interactive "peer-to-peer" ("P2P") file transfer technology protocol called BitTorrent.

5.      Exhibit A lists the Defendant's IP address, one observed date and time when Defendant uploaded portions of each copyrighted motion picture set forth in Exhibit B, as well as the film name, file hash, BitTorrent client used by Defendant, and session duration.

6.      Exhibit B lists each copyrighted work by name, and provides the registration number and registration date of each film. Exhibit C shows the copyright registrations.

7.      Upon information and belief, Defendant was a willing and knowing participant in the BitTorrent swarm used to illegally distribute each of Plaintiff's three (3) copyrighted works at issue (the "Copyrights-in-Suit").

## PARTIES

8.      Plaintiff is a German company located at Industriestr, 69a, Vielsdorf, 98669 Germany, that produces, markets and distributes motion pictures.

9.      Defendant is a BitTorrent user whose computer(s) is collectively interconnected within a swarm for the sharing of unique files.

10.     Despite Plaintiff's use of the best available investigative techniques, it is impossible for Plaintiff to identify Defendant by name at this time.  Thus, the true name and

capacity, whether individual, corporate, associate or otherwise, of Defendant is unknown to Plaintiff, who therefore sues Defendant by such a fictitious name.

11.     Defendant is known to Plaintiff by the IP Address assigned to him or her Defendant by his or her Internet Service Provider ("ISP") on the date and at the time at which the infringing activity of Defendant was observed.  This information is provided in Exhibit A.  In addition, and as provided in Exhibit A, Plaintiff has learned the ISP for Defendant, the torrent files copied and distributed by Defendant, the BitTorrent client application(s) utilized by Defendant, and the location of Defendant (Missouri) at the time of upload as determined by geolocation technology.

12.     Plaintiff believes that information obtained in discovery will lead to the identification of Defendant's true name and permit the Plaintiff to amend this Complaint to state the same.  Specifically, Plaintiff intends to subpoena SBC Internet Services d/b/a AT&T Internet Services ("AT&T"), the ISP utilized by Defendant, in order to learn the identity of the Defendant.

13.     Defendant's infringements allow him or her and others to unlawfully obtain and distribute unauthorized copies of Plaintiff's motion pictures for which Plaintiff spent a substantial amount of time, money and effort to produce, market and distribute.

14.     Plaintiff's copyrighted motion pictures are currently available for purchase on the internet. For example, "Creampie Young Girls 2" is currently available for purchase at:

    http://www.erodvd.nl/ssl/p-/purzel-video/creampie-young-girls-2/prod_54555.html

15.     Due to the rampant infringement of the Copyrights-in-Suit, Plaintiff has had to retain a forensic internet investigator.

16.     Plaintiff's investigator has downloaded each copyrighted motion picture from the Defendant identified herein.

## TECHNICAL BACKGROUND

17.     P2P networks, at least in their most common form, are computer systems that enable Internet users to: 1) make files (including motion pictures) stored on each user's computer available for copying by other users or peers; 2) search for files stored on other users' computers; and 3) transfer exact copies of files from one computer to another via the Internet.  The particular P2P protocol at issue in this suit is called "BitTorrent."

18.     BitTorrent is a peer-to-peer file sharing protocol used for copying and distributing data on the Internet, including files containing digital versions of motion pictures.  Rather than downloading a file from a single source, the BitTorrent protocol allows users to join a swarm, or group of users to download and upload from each other simultaneously.  The process works as follows:

19.     Users intentionally download a small program that they install on their computers – the BitTorrent "client" application.  The BitTorrent client is the user's interface during the downloading/uploading process.  There are many different BitTorrent clients, all of which are readily available on the Internet for free.

20.     BitTorrent client applications typically lack the ability to search for torrent files. To find torrent files available for download (as made available by other BitTorrent users), users intentionally visit torrent sites using any standard web browser.

21.     A torrent site is a website that contains an index of torrent files being made available by other users (generally an extensive listing of movies and television programs,

4

among other copyrighted content). The torrent site hosts and distributes small files known as "torrent files," which contain a 40 character alphanumeric code (assigned by the National Security Agency) that uniquely identifies a file. Although torrent files do not contain actual audio/visual media, they instruct a user's computer where to go and how to get the desired file. Torrent files interact with specific trackers, allowing the user to download the desired file.

22.     A BitTorrent tracker manages the distribution of files, connecting uploaders (those who are distributing content) with downloaders (those who are copying the content). A tracker directs a BitTorrent user's computer to other users who have a particular file, and then facilitates the download process from those users. When a BitTorrent user seeks to download a movie or television file, he or she merely clicks on the appropriate torrent file on a torrent site, and the torrent file instructs the client software how to connect to a tracker that will identify where the file is available and begin downloading it. In addition to a tracker, a user can manage file distribution through a Peer Exchange and/or a Distributed Hash Table.

23.     Files downloaded in this method are downloaded in hundreds or thousands of individual pieces. Each piece that is downloaded is immediately thereafter made available for distribution to other users seeking the same file. The effect of this technology makes every downloader also an uploader of the content. This means that every user who has a copy of the infringing material on a torrent network must necessarily also be a source of download for that material.

24.     Thus, each IP address identified by the tracker is an uploading user who is currently running a BitTorrent client on his or her computer and who is currently offering the desired motion picture file for download. The downloading user's BitTorrent software then

begins downloading the motion picture file without any further effort from the user by communicating with the BitTorrent client programs running on the uploading users' computers.

25.     The life cycle of a file shared using BitTorrent begins with just one individual – the initial propagator, sometimes called a "seeder." The initial propagator intentionally elects to share a torrent file with a torrent swarm.  For example, Hash F818B9C0851D9DDAE0D1D650A55AAE52433B92D9 ("Hash F818") provides access to Plaintiff's copyrighted motion picture "Creampie Young Girls 2".

26.     This interactive, simultaneous data-sharing connection is often referred to as a "swarm" and leads to a rapid viral spreading of a file throughout peer users.  As more peers join the swarm, the likelihood of a successful download increases.  Because of the nature of a BitTorrent protocol, any user that has downloaded a piece prior to the time a subsequent user downloads the same file is automatically a source for the subsequent peer so long as that prior user is online at the time the subsequent user downloads a file.  Thus, after a successful download of a piece, the piece is made available to all other users.

27.     Other members of the swarm connect to the respective seeds to download the files, wherein the download creates an exact digital copy of Plaintiff's copyrighted motion picture on the downloaders' computers.  For the swarm, as additional infringers request the same file, each additional infringer joins the collective swarm, and each new infringer receives pieces of the file from each other infringer in the swarm who has already downloaded any part of the file.  Eventually, once the initial propagator has distributed each piece of the file to at least one other infringer, so that together the pieces downloaded by members of the swarm comprise the whole motion picture when reassembled, the initial propagator may leave the swarm, and the

remaining infringers can still obtain a full copy of the motion picture by exchanging the pieces of the motion picture that each one has.

28.     This distributed nature of BitTorrent leads to a rapid viral sharing of a file throughout the collective peer users.  As more peers join the collective swarm, the frequency of successful downloads also increases.  Because of the nature of the BitTorrent protocol, any user that has downloaded a file prior to the time that a subsequent peer downloads the same file is automatically a source for the subsequent peer, so long as that first peer is online at the time the subsequent peer requests the file from the swarm.  Because of the nature of the collective swarm, every infringer is – and by necessity all infringers together are – simultaneously both stealing the Plaintiff's copyrighted material and redistributing it.

29.     Plaintiff has recorded Defendant actually publishing the each motion picture listed in Exhibit B via BitTorrent, as Plaintiff's investigator has downloaded each motion picture from Defendant.

30.     Plaintiff's motion pictures are easily discernible as professional works.  Plaintiff created the motion pictures using professional performers, directors, cinematographers, lighting technicians, set designers and editors.  Plaintiff created the motion pictures with professional-grade cameras, lighting, and editing equipment.

7

## THE COPYRIGHTS

31.     Plaintiff is, and at all relevant times has been, the copyright owner of exclusive

rights under United States copyright law with respect to the motion pictures listed in Exhibit B.

32.     The motion pictures contain wholly original material that is copyrightable subject

matter under the laws of the United States.

33.     Purzel Video, as the owner, holds the copyright registration on the motion

pictures. Exhibit B sets forth information regarding each motion pictures copyright. Attached as

Exhibit C is each film's copyright registration.

34.     Under the Copyright Act, Purzel Video is the proprietor of all right, title, and

interest in the Copyrights-in-Suit, including the right to sue for past infringement.

35.     Under the Copyright Act, Plaintiff also possesses the exclusive rights to reproduce

the Copyrights-in-Suit and to distribute the Copyrights-in-Suit to the public.

36.     Defendants had notice of Plaintiff's copyright rights.  At least plaintiff's motion

picture DVD cases display a copyright notice.

## DEFENDANT'S SPECIFIC ACTIONS

37.     Defendant, without authorization, copied and distributed the audiovisual motion

pictures owned by and registered to Plaintiff in violation of 17 U.S.C. §§ 106(1) and (3).

38.     Defendant initiated his infringing conduct by first intentionally logging into the

one of many BitTorrent client repositories known for their large index of copyrighted movies,

television shows, software and adult videos.  Defendant then intentionally obtained a torrent file.

This torrent file contained a file hash directed to one of the Plaintiff's copyrighted motion

pictures. The torrent file, through its unique file hash, acted as a "roadmap," leading the Defendant's BitTorrent client to the desired file.

39.     For example, Defendant downloaded the torrent file containing file Hash F818 and intentionally loaded this torrent file into his or her BitTorrent client. Defendant utilized the BitTorrent client BitTorrent version 7.2.1 to illegally copy and further distribute Plaintiff's motion picture.

40.     With the torrent file intentionally loaded by Defendant, his BitTorrent program used the BitTorrent protocol to initiate simultaneous connections with hundreds of other users possessing and "sharing" copies of the digital media described in Hash F818, namely, Plaintiff's copyrighted motion picture "Creampie Young Girls 2." The program coordinated the copying of Plaintiff's motion picture to Defendant's computer from the other users, or peers, sharing the film.   As the motion picture was copied to Defendant's computer piece by piece, these downloaded pieces of Plaintiff's motion pictures were then immediately available to all other peers seeking to illegally download the film.

41.     Defendant performed the same or substantially similar actions described in Paragraphs 38 through 40 for the two (2) other copyrighted works listed in Exhibit B.

42.     Defendant's distribution of even a single unlawful copy of a motion picture can result in the nearly instantaneous worldwide distribution of that single copy to an unlimited number of people.   In this case, each Defendant's copyright infringement built upon prior infringements, in a cascade of infringement.

43.     Each time Defendant unlawfully distributes a free copy of Plaintiff's copyrighted motion pictures to others over the Internet, particularly via BitTorrent, each recipient can then

distribute that unlawful copy to others without degradation in sound or picture quality. Thus, a Defendant's distribution of even one unlawful copy of a motion picture can result in the nearly instantaneous worldwide distribution to a limitless number of people. Plaintiff now seeks redress for this rampant infringement of its exclusive rights in its copyrighted motion pictures.

**COUNT I**
**DIRECT COPYRIGHT INFRINGEMENT**

44.    Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 43 as if fully set forth herein.

45.    Plaintiff is, and at all relevant times, has been, the copyright owner of the three (3) copyrights infringed upon by Defendant.

46.    Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce the Copyrights-in-Suit and to distribute the Copyrights-in-suit to the public.

47.    The Plaintiff alleges that Defendant, without the permission or consent of the Plaintiff, has used, and continues to use, BitTorrent software to distribute Plaintiff's copyrighted motion pictures to the public, including hundreds, if not thousands of other BitTorrent users, and/or to make the Plaintiff's copyrighted motion pictures available for distribution to others.   In doing so, Defendant has violated Plaintiff's exclusive rights of reproduction and distribution. Defendant's actions constitute infringement of Plaintiff's copyrights and exclusive rights under copyright. Defendant has, without the permission or consent of Plaintiff, distributed the copyrighted motion pictures owned by Plaintiff *en masse*, through a public website and any one of various public BitTorrent trackers, Peer Exchanges, and/or Distributed Hash Tables.

48.     Defendant's acts of infringement have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

49.     As a result of Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504 and to its attorney's fees and costs pursuant to 17 U.S.C. § 505.

50.     The conduct of Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury.  Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendant from further infringing Plaintiff's copyright and ordering that Defendant destroy all copies of the copyrighted motion pictures made in violation of Plaintiff's exclusive rights to their respective copyrights.

## COUNT II
## CONTRIBUTORY COPYRIGHT INFRINGEMENT

51.     Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 50 as if fully set forth herein.

52.     Plaintiff is, and at all relevant times, has been, the copyright owner of the three (3) copyrights infringed upon by Defendant.

53.     Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce the Copyrights-in-Suit and to distribute the Copyrights-in-suit to the public.

54.     The Plaintiff alleges that Defendant, without the permission or consent of the Plaintiff, has participated in various BitTorrent swarms for the purpose of making Plaintiff's motion pictures available for distribution to himself or herself as well as others, has used, and continues to use, BitTorrent software to distribute the motion pictures to the public, including

11

hundreds of other BitTorrent users, and/or to make the motion pictures available for distribution to others.  In doing so, Defendants have violated Plaintiff's exclusive rights of reproduction and distribution.

55.     By participating in BitTorrent swarms with other peers, Defendant induced, caused or materially contributed to the infringement of Plaintiff's copyrights and exclusive rights under copyright by other peers and other swarm members.

56.     Defendant's acts of contributory infringement have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

57.     As a result of each Defendant's contributory infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504 and to its attorney's fees and costs pursuant to 17 U.S.C. § 505.

58.     The conduct of Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury.  Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendant from further contributing to the infringement of Plaintiff's copyrights and ordering that Defendant destroy all copies of the copyrighted motion pictures made in violation of Plaintiff's exclusive rights to the copyright.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. For entry of preliminary and permanent injunctions providing that Defendant shall be enjoined from directly or indirectly infringing Plaintiff's Copyrights-in-Suit, including without limitation by using the Internet to reproduce or copy Plaintiff's Copyrights-in-Suit, to distribute Plaintiff's Copyrights-in-Suit, or to make Plaintiff's Copyrights-in-Suit  available for distribution to the public, except pursuant to a lawful

license or with the express authority of Plaintiff.  Defendant also shall destroy all

copies of Plaintiff's copyrighted motion pictures that Defendant has downloaded onto

any computer hard drive or server without Plaintiff's authorization and shall destroy

all copies of those downloaded motion pictures transferred onto any physical medium

or device in Defendant's possession, custody, or control.

B.  For actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election

of the Plaintiff.

C.  For Plaintiff's costs.

D.  For Plaintiff's reasonable attorney's fees.

E.  For such other and further relief as the Court deems proper.

Respectfully submitted,
PLAINTIFF PURZEL VIDEO GMBH,

By its attorneys,
SIMMONS BROWDER GIANARIS
ANGELIDES & BARNERD LLC

Dated:   August 23, 2013

By:  /s/ Paul A. Lesko
Paul A. Lesko – E.D.Mo Bar No. 51914
One Court Street
Alton, IL 62002
Ph: 618.259.2222
Fax: 618.259.2251
plesko@simmonsfirm.com